UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KLORISSA MOODY,

           Plaintiff,

    v.                                       CAUSE NO. 3:20-CV-953 DRL

INDIANA DEPARTMENT OF
CORRECTION,

           Defendant.

OPINION AND ORDER

The Indiana Department of Correction (IDOC) fired Klorissa Moody after an independent investigation reported unprofessional behavior. Ms. Moody filed suit against IDOC, claiming she was instead fired because of her sex in violation of Title VII of the Civil Rights Act of 1964. IDOC requests summary judgment. The court grants the motion.

BACKGROUND

In December 1992, Klorissa Moody began her career at IDOC. After multiple promotions spanning twenty years, IDOC promoted her to district supervisor in 2014. She remained a district supervisor until she was dismissed on November 15, 2019.

As a district supervisor, Ms. Moody oversaw eighteen employees. Northern Regional Director Mia Kelsaw and Director of Parole Services Troy Keith were two of her supervisors. She was never disciplined before her dismissal. In prior years, she received reviews that she "exceed[ed] expectations" three times and "me[t] expectation[s]" twice.

On September 25-26, 2019, Director Kelsaw received nine individual complaints about Ms. Moody's behavior from her subordinates. These complaints covered a variety of conduct, including favoritism, vulgar language, physical abuse toward staff, inadequate supervisory skills, and racially connotative statements. Director Kelsaw emailed the complaints to Carmen Steadham for

investigation, with a copy to Director Keith. Ms. Steadham was a human resources generalist with the Indiana State Personnel Department (INSPD) who was assigned to IDOC.

Ms. Steadham began reviewing the allegations on November 1, 2019. She interviewed every employee who sent a complaint, two additional employees, and Ms. Moody. Ms. Steadham concluded in a written report that Ms. Moody behaved unprofessionally [ECF 26-4]. For instance, she reported that, during a staff meeting, Ms. Moody ordered one agent to stand up, flip Ms. Moody off, and say "f*** you" to her. Ms. Moody told one agent "you ain't s***" as a correctional police officer. Ms. Moody was aware that one agent took a picture of another agent's backside with a third agent's cell phone—yet she took no action. Ms. Moody consistently gave favorable reviews to three agents who she considered friends. She cursed and used vulgar language toward staff. She hit one agent in the forehead and threw a cellphone at another. She touched a Black agent's hair without permission.

Ms. Moody confirmed much of this behavior in her interview with Ms. Steadham or during her deposition [ECF 26-4, 26-1]. She said she instructed one agent to flip her off and tell her "f*** you;" that she cursed at agents, telling one agent that he "wasn't s***;" that she physically hit an agent on the forehead and called him a "probie" (which Ms. Moody claims was in a "joking" manner); that she "tossed" a cellphone at another agent and later apologized for it; and that she touched a Black agent's hair without permission. She suggested there may have been some retaliation against her because she requested timely submission of reports from her subordinates.

Ms. Steadham's report concluded that Ms. Moody exhibited favoritism and unfair treatment in the workplace, used vulgar language and profanity towards staff, hit another staff member, and made statements with racial connotations. Ms. Steadham recommended that Ms. Moody be dismissed from her employment. Director Keith received the investigation report and recommendation on November 7, 2019. Based on the INSPD report, Director Keith dismissed Ms. Moody on November 15, 2019. She was dismissed "due to her exhibiting inappropriate and unprofessional conduct." Soon

2

after, IDOC replaced Ms. Moody with another female supervisor. On November 12, 2020, Ms. Moody filed a sex discrimination claim under Title VII.

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

## DISCUSSION

Ms. Moody claims that she was terminated because of her sex and that IDOC's proffered reasons for her termination were pretextual. She argues that there is pretext because the employees had an ill intent, the investigation wasn't thorough, no one cited a policy she violated, and similarly situated male employees who acted like her weren't terminated. She cites her strong performance record to show that her supervisors were ready to fire her when they got their first chance.

Title VII prohibits a qualifying employer from "discharg[ing] any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The law uses a holistic approach that poses a singular question: whether the evidence would permit a reasonable factfinder to conclude that Ms. Moody's sex caused her termination. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The court considers the evidence as a whole. *Id.*

That said, "the well-known and oft-used *McDonnell Douglas* framework for evaluating discrimination remains an efficient way to organize, present, and assess evidence in discrimination cases." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "There is no magic to this test; it is merely one way of culling the relevant evidence needed to demonstrate whether a reasonable factfinder could conclude that an employer engaged in an adverse employment action based on the plaintiff's race or other proscribed factor." *Johnson*, 892 F.3d at 894.

Under the *McDonnell Douglas* framework, Ms. Moody must demonstrate that (1) she is a member of a protected class, (2) she met IDOC's legitimate expectations, (3) she suffered an adverse employment action despite her reasonable performance, and (4) similarly situated employees who were not members of her protected class were treated more favorably. *See McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019) (applying framework post-*Ortiz*). If she meets her burden on each element of her *prima facie* case, the burden shifts to IDOC "to articulate a legitimate, nondiscriminatory reason for the adverse employment action;" if IDOC carries that burden, the burden shifts back to Ms. Moody to submit evidence that IDOC's explanation is pretextual. *Id.*

IDOC does not contest that Ms. Moody is a member of a protected class or that she suffered an adverse employment action. Rather, IDOC contends that the evidence is insufficient to support a reasonable finding that Ms. Moody's professional conduct met IDOC's legitimate expectations or that IDOC treated similarly situated male employees differently.

4

Ms. Moody claims that IDOC's reasons for firing her were pretextual, but that puts the cart before the horse. She cannot make a *prima facie* case. No reasonable jury could find that she was meeting IDOC's legitimate expectations or that similarly situated male district supervisors were treated more favorably. *Id.* at 369 ("As [the plaintiff] has not identified any similarly situated employees to allow a factfinder to conduct a meaningful comparison, [her] *prima facie* case for discrimination fails.") (quotation and citation omitted); *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010) (must show meeting expectations at time of adverse employment action).

There is no genuine triable issue on either prong. First, as to IDOC's legitimate expectations, Ms. Moody has confirmed that she did nearly everything she was accused of doing. Her only dispute is that she either meant her conduct to be non-offensive or thought it was acceptable behavior at IDOC based on the culture. She claims that she neither hit an agent nor threw a phone but rather merely "tapped" an agent on the forehead and "tossed" a phone at an agent. The distinctions between "hit" and "tapped" and "threw" and "tossed" don't raise a genuine factual dispute. She still admits that the actions occurred and that she should not have tossed the cellphone. Employee expectations are judged by "looking at [the employee's] job performance through the eyes of her supervisors at the time of [the adverse action]." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). No reasonable jury could find that IDOC lacked a legitimate expectation that Ms. Moody, for instance, abstain from vulgarity and physical abuse with her subordinates—regardless of what she might characterize as a jovial intent. Nor could a reasonable jury find that Ms. Moody met IDOC's legitimate expectations.

Ms. Moody says she was never told what policy she violated. Considering the nature of the conduct for which she was terminated, it would seem rather self-evident. She was a supervisor in a government agency. A certain level of decorum is expected. The question is whether she performed reasonably under her supervisor's legitimate expectations. *McDonnell Douglas*, 411 U.S. at 802. No reasonable jury could find that she did—policy or no policy.

5

Ms. Moody believes that her employees had a discriminatory motive for filing their complaints. But again, in the Title VII context, Ms. Moody's performance must be viewed from the eyes of her supervisors. *Gates*, 513 F.3d at 689. The subordinates never made the decision to terminate her. Their complaints, however motivated, underwent an independent investigation. This investigation confirmed a plethora of unprofessional behavior.

Ms. Moody cites her clean employment record before her termination. Though she had received praise for her work in the years leading up to her dismissal, she was fired for her "inappropriate and unprofessional conduct" at the end of her time at IDOC. No evidence shows that IDOC fired Ms. Moody on a whim because it finally had the chance to do so. IDOC reached its conclusion after complaints from half of Ms. Moody's subordinates and after INSPD's independent investigation. Exemplary behavior by an employee for years isn't a license to engage thereafter in unprofessional and inappropriate conduct within the workplace.

Second, Ms. Moody also cannot demonstrate for a reasonable jury that a similarly situated male employee was treated more favorably than her. Similarly situated employees must be directly comparable to the plaintiff in all material respects. *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). Ms. Moody must show at a minimum that the comparators "(1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them," *McDaniel*, 940 F.3d at 369 (quotations and citation omitted), though this isn't a "hard and fast test," *Johnson*, 892 F.3d at 895. "Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met [her] burden on this issue." *McDaniel*, 940 F.3d at 369.

Ms. Moody points to five male supervisors who were not fired after demonstrating unprofessional behavior. Taken in the light most favorable to her, Ms. Moody fails to identify a

6

similarly situated male employee out of the bunch. One district supervisor (Drew Adams) shouted obscenities toward his supervisor, and he received a written reprimand, not a pass. That singular incident directed toward a supervisor is altogether different than multiple incidents directed toward multiple subordinates in the workplace. No reasonable jury could say otherwise.

No other proffered comparator comes close to meeting the standard. Indeed, as to the others, Ms. Moody offers only what she heard from someone else. She has no personal knowledge of these other alleged events, and she offers no evidence or argument that she could tender these facts in an admissible, non-hearsay form. *See* Fed. R. Civ. P. 56(c)(1), (c)(2); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

Ms. Moody jumps to pretext without having met her initial burden to establish some inference of discriminatory animus. She says the investigation omitted other employees she supervised. This falls short of establishing any lie or pretext. *See Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005 (7th Cir. 2001). "[C]hallenges to the manners in which employees conduct these investigations are generally misspent." *Marshall v. Ind. Dep't of Corr.*, 973 F.3d 789, 793 (7th Cir. 2020) (citation omitted). The court isn't a "super-human-resources department, judging whether the investigation was exemplary." *Id.*; *see Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1139 (7th Cir. 1997). A rather sobering nine of Ms. Moody's eighteen direct reports expressed concerns about her. The investigator interviewed eleven. Ms. Moody offers no evidence of what another employee might have said or shared that would have changed the outcome of the investigation or IDOC's basis for termination. Having admitted almost all conduct of concern, she offers no evidence that another employee would have altered the view of IDOC's legitimate expectations for her employment or IDOC's legitimate basis for termination.

Ms. Moody's claims cannot meet her *prima facie* burden under *McDonnell Douglas*, and they fare no better under *Ortiz*'s holistic approach. The court must determine "whether the evidence would permit a reasonable factfinder to conclude" that Ms. Moody's sex "caused the discharge or other

7

adverse employment action." *Ortiz*, 834 F.3d at 765. The record doesn't reasonably permit this finding. To her knowledge, she observed a supervisor (Troy Keith) once glare at the women at the table when announcing changes to those working in parole. She testified that a regional director (Mitch Donick) once directed another district supervisor (Jennifer Sims) to follow normal protocols only to be disciplined later when she did not correct a parole agent who was stealing drugs from an offender. But neither event gives rise to an inference of sex discrimination for a reasonable jury, much less vis-à-vis Ms. Moody. She admitted that no one made any statements suggestive of discrimination. In addition, IDOC replaced Ms. Moody with a woman, and this powerfully shows that sex cannot reasonably have been the basis of IDOC's decisionmaking. *See Steinhauer v. DeGolier*, 359 F.3d 481, 488 (7th Cir. 2004).

## CONCLUSION

Accordingly, the court GRANTS IDOC's summary judgment motion [ECF 26] and DENIES AS MOOT the motion to continue the trial [ECF 37]. The clerk's entry of judgment terminates this case.

SO ORDERED.

September 2, 2022                                           *s/ Damon R. Leichty*
                                                                              Judge, United States District Court